## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DELORIS ANN STEVENS , | Case No. 3:14:-CV 246 RRB |
| Plaintiff, | |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **ORDER REMANDING FOR PAYMENT OF BENEFITS DOCKET 16** |
| Defendant. | |

## I. INTRODUCTION

Claimant, DELORIS ANN STEVENS, filed an application for Disability Insurance Benefits which Defendant, the Commissioner of Social Security, denied. Claimant has exhausted her administrative remedies and seeks relief from this Court, arguing that the Commissioner's decision that she is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. Docket 1. Claimant seeks a reversal of the Commissioner's decision and an award of benefits. Specifically, she asserts that the ALJ erred in the evaluation of the evidence pertaining to her back impairment and psoriatic arthritis. Docket 16 at 1. Claimant requests that this Court remand this case to the Commissioner for payment of benefits, pursuant to Sentence Four of 42 U.S.C. § 405(g). Docket 16. In opposition, the Commissioner argues that although errors were

made, the proper remedy is a remand to the ALJ for further consideration. Docket 20. Claimant has replied. Docket 21.

For the reasons set forth below, Claimant's Motion at **Docket 16** is GRANTED and this matter is REMANDED for payment of benefits.

## II. STANDARD OF REVIEW

The findings of the Administrative Law Judge ("ALJ") or Commissioner of Social Security regarding any fact shall be conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g)(2010). A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)). "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Such evidence must be "more than a mere scintilla," but also "less than a preponderance." *Id. at* 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

# III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits

("DIB") to people who have contributed to the Social Security program and who suffer from a

physical or mental disability. 42 U.S.C. § 423(a) (2012). In addition, supplemental security income

benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who

do not have insured status under the Act. 42 U.S.C. § 1381 (2012). Disability is defined in the

Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. § 423(d)(1)(A) (2012). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or
> mental impairments are of such severity that he is not only unable to do his previous
> work but cannot, considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hired if he
> applied for work. For purposes of the preceding sentence (with respect to any
> individual), "work which exists in the national economy" means work which exists
> in significant numbers either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. § 423(d)(2)(A) (2012).

The Commissioner has established a five-step process for determining disability. Claimant

bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999). The burden shifts to the Commissioner at step five. *Id.* The steps, and the ALJ's findings in this case, are as follows:[1]

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity**. The ALJ found that Plaintiff had not engaged in substantial work activity since her alleged onset date of August 20, 2010. Tr. 15.**

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. **The ALJ found that Plaintiff's psoriasis, psoriatic arthritis, Type II diabetes, discogenic disorder of the lumbar spine, and obesity were severe impairments. Tr. 15.**

**Step 3.** Determine whether the impairment is the equivalent of a number of listed impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments and meets the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step**. According to the ALJ, Claimant has no such impairment. The ALJ specifically considered listing 1.04, 9.00, 8.04, 8.05, and 14.09. Tr. 16-18.**

**Residual Functional Capacity**. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. This RFC assessment is used at both step four and step

---

[1] The ALJ noted that Claimant met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 15.

five. 20 C.F.R. §§ 404.1520(a)(4)(2011); §416.920(a)(4)(2011). **In evaluating her RFC, the ALJ concluded that Claimant can perform sedentary work except that she is limited to: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, ramps or stairs; no overhead reaching with the bilateral upper extremities; frequent bilateral gross and fine manipulation; and avoiding concentrated exposure to excessive vibration. Tr. 18.**

**Step 4.** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. **The ALJ found that Claimant is capable of performing past relevant work as a receptionist and employment technician. Tr. 22.**

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled. If not, the claimant is considered disabled. **The ALJ did not reach this step.**

Claimant bears the burden of proof at steps one through four. *Tackett*, 180 F.3d at 1098. The burden shifts to the Commissioner at step five. *Id.*

# IV. DISCUSSION

## A.     Issues on Appeal

The Court finds no error in the ALJ's analysis and findings under Steps 1 or 2 and Claimant does not contest the ALJ findings under these steps.

Claimant alleges that 1) the ALJ failed to give clear and convincing reasons for rejecting the opinion of the treating physician in favor of the opinions of the non-examining sources; 2) the ALJ did not give germane reasons for rejecting the opinion of PA-C Okuley; 3) the ALJ did not give clear and convincing reasons for finding Claimant's allegations not fully credible; and 4) the ALJ's rejection of the lay witness evidence was not based on the correct legal standard. Docket 16. Claimant argues that the proper remedy for the errors in the ALJ's decision is remand for payment of benefits. *Id.* at 20.

In response, the Commissioner concedes that the ALJ made prejudicial errors with respect to the limitations assessed by Ms. Okuley, a physician assistant. Docket 20 at 2. The Commissioner does not address the remaining arguments, arguing only that "the record is not free from conflicts, not all factual issues have been resolved, and the claimant's entitlement to benefits is not clear." *Id.* The Commissioner requests a remand for further proceedings.

### 1.  Listed Impairment - Psoriasis

Although not discussed by the parties, the Court finds an issue at Step 3 of the ALJ's analysis. The ALJ stated "I have considered whether the claimant's psoriasis meets or equals listings 8.04 . . . [or] 8.05. After a careful review of the entire medical evidence of record, I find that none of the criteria set forth in listings 8.04 or 8.05 are satisfied in this case."

The ALJ is mistaken.  Listing 8.05 states, in its entirety:

8.05 Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

20 C.F.R. pt. 404, subpt. P, App. 1.

The medical records reflect that as of **September 2011**, Claimant had already had psoriasis lesions for "some time." Tr. 336.  An exam revealed psoriasis primarily on her scalp, with smaller lesions on her elbows, inframammary areas, and outer ears. *Id.*  By April 2012  the psoriasis had spread to her face, scalp, extremities and trunk despite Humira injections once per week.  Tr. 419.  In May 2012 her treating physician, Dr. John Botson, an Orthopedic Physician, found psoriasis on 50% of her total body surface area.  Tr. 474.   The psoriasis began to improve in July 2012 (Tr. 402), and was deemed in remission by December 2012.  Tr. 593.   Accordingly, under the plain language of the C.F.R.,  Claimant's psoriasis qualified her for disability – conservatively speaking –  between September 2011 and December 2012 when plaque psoriasis was first identified in the medical records and when it went into remission.

## 2.  Listed Impairment - Psoriatic Arthritis

The ALJ expressly found – without explanation – that Claimant's psoriatic arthritis did not meet or equal a listed impairment.  Tr. 18.

In **December 2011** Claimant was formally diagnosed with psoriatic arthritis, noting that she had been treated unsuccessfully for pain for the prior two years.  Tr. 326.  By **April 2012** Her psoriatic arthritis was again noted, particularly in her hands and fingers.  Tr. 419.  By **May 2012** she obtained a second opinion for her psoriatic arthritis. Upon review of her "complicated" file,

Dr. Botson opined that "she has been known to be a very compliant patient who has subsequently had worsening symptoms of her psoriasis and psoriatic arthritis, thus leading her to rheumatologic evaluation." Tr. 474. He noted that **joint pain started in 2010**, including swelling, redness and warmth in her hands, and noted her joint pain worsens as her psoriasis worsens. Treatment for joint pain with anti-inflammatory medications had been minimally helpful. Diabetes prevented use of coricosteroids. Aggressive treatment of psoriasis and psoriatic arthritis was recommended. Tr. 477.

In **July 2012** Claimant reported an improvement in her *psoriasis*, but denied any change in her *psoriatic arthritis* symptoms. Tr. 402. She still had to take a nap every day. Tr. 539. She reported being unable to tie shoelaces or fasten buttons, open jars, take a tub bath, vacuum, do yard work. Tr. 568-69.

In **August 2012** PA Sylvia Okuley noted that Claimant's psoriasis continued to improve, but "unfortunately she denies improvement in her psoriatic arthritis." Tr. 511. The lack of improvement in the psoriatic arthritis is echoed in other records. Tr. 549, 553. By **September 2012**, Claimant had had three of five Remicade infusions, and she was told not to expect much improvement in her arthritis until after the fifth infusion. Tr. 517, 555. An **October 2012** medical source statement indicates numerous problems, including psoriatic arthritis and plaque psoriasis, manifesting symptoms including fatigue, malaise, pain, numbness, difficulty walking, muscle weakness, loss of manual dexterity, vision blurriness, difficulty thinking/concentrating, loss of balance, and headaches. Tr. 531.

In **November 2012**, treating physician Dr. John Botson, issued a medical source statement regarding arthritis, noting a fair prognosis of her chronic psoriatic arthritis, that depression and anxiety exacerbated her pain, that her symptoms were severe enough to frequently interfere with attention and concentration, and that her impairments had lasted at least twelve months. Tr. 583-85. He opined that she would need a break every hour of an eight hour work day, that her legs would need to be elevated to hip level when sitting 75% of the time. He indicated significant limitations in repetitive reaching, handling or fingering, and that he anticipated three absences or more per month. Tr. 586-87. In **December 2012,** Dr. Botson noted a slow but steady improvement in her joint abnormalities due to methotrexate and Remicade. Tr. 589. He opined that she was "significantly disabled" by the pain in her back with some radicular symptoms in her legs. Tr. 590. Claimant indicated that hydrocodone and gabapentin help her "other joint issues" but do not completely resolve the symptoms. Tr. 590. The ALJ rejected Dr. Botson's opinion (assigning "only some weight") because he found Dr. Botson's opinion evidence was rendered before Dr. Botson "noted that the claimant's psoriatic arthritis had gone into remission." Tr. 21. Claimant has argued, and the Court agrees, that the ALJ has confused plaque psoriasis (a skin condition) with psoriatic arthritis (a painful auto-immune condition). Docket 16 at 4-6. In December 2012, **Dr. Botson deemed Claimant's *psoriasis* in remission, but noted she continued to have significant joint symptoms and joint pains [i.e. psoriatic arthritis] that are "unlikely to completely resolve."** He considered her psoriatic arthritis as "improving," although she was to continue methotrexate and Remicade via IV infusion. Tr. 593. In **January 2013** Dr. Botson noted that "I do not see any need to change any

of her psoriatic arthritis medications which have been dramatically helpful in putting her *psoriasis* in remission." Tr. 620 (emphasis added).

The ALJ's rejection of the treating physician's opinions was based upon a misreading of the record. **Claimant's psoriatic arthritis has never gone into remission.** Moreover, the Court finds that the record more than supports that psoriatic arthritis, which is specifically contemplated in the C.F.R. under "Inflammatory Arthritis" § 14.09, is demonstrated by the record in this matter. In order to qualify under this listing, Claimant would have to show:

> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, App. 1, § 14.09. The medical records here demonstrate repeated manifestations of psoriatic arthritis – if not constant manifestation – between December 2011 and the end of the administrative record in January 2013. Tr. 327, 402, 419-20, 474, 477, 511, 517, 531, 539, 549, 553, 555, 568-69, 583-93, & 620. The record reflects severe fatigue and malaise, as discussed herein, in addition to limitations of activities of daily living, social functioning, and deficiencies in concentration, persistence and pace. *See* Tr. 35-58, 531 & 583.

In short, Claimant qualifies for benefits under Step 3 of the analysis for her psoriasis and psoriatic arthritis. The Court offers no evaluation of Claimant's other severe impairments, such as diabetes, and need not address the other issues raised by the parties.

## V. CONCLUSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court has carefully reviewed the administrative record, including extensive medical records. The Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was *not* supported by substantial evidence as discussed herein.

## VI. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that the Claimant's Motion for Summary Judgment at **Docket 16** is **GRANTED** and this matter is **REMANDED for an Award of Benefits.**

**IT IS SO ORDERED** this 21st day of October, 2015.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE